# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

JEREMY A. STEELE,

              Plaintiff,

v.

CORRECTIONAL OFFICERS: C.O.
AYOTTE, C.O. OLSEN, CORRIGAN
CORRECTIONAL CENTER; and JOHN
DOE, UCONN HOSPITAL EMPLOYEE,

              Defendants.

Civil Action No.
3: 17 - CV - 1370 (CSH)

FEBRUARY 6, 2018

## INITIAL REVIEW ORDER

**Haight, Senior District Judge:**

*Pro se* plaintiff Jeremey A. Steele, currently incarcerated at MacDougall-Walker Correctional Institution ("MacDougall-Walker"), has commenced this action pursuant to 42 U.S.C. § 1983 against Correctional Officers Ayotte and Olsen, alleging violations of his Eighth Amendment rights. He has also brought a state law claim for negligence against John Doe, a truck driver employed by UCONN Hospital. The Court has conducted its statutorily mandated initial review of the case. For the reasons set forth below, the Complaint will be dismissed in part.

## I. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A(b), the Court must review a prisoner's civil complaint against governmental actors and "dismiss . . . any portion of the complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)-(2). This requirement

1

applies whether the inmate has paid the filing fee or is proceeding in forma pauperis. *See Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam).

In order to proceed, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than the unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

"[W]hether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64. When "well-pleaded factual allegations" are present, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Factual disputes do not factor into a plausibility analysis under *Iqbal* and its progeny.

"Although all allegations contained in the complaint are assumed to be true, this tenet is `inapplicable to legal conclusions.'" *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir.2012) (quoting *Iqbal*, 556 U.S. at 678). *See also Amaker v. New York State Dept. of Corr. Servs*., 435 F. App'x 52, 54 (2d Cir.2011) (same). Accordingly, the Court is not "bound to accept conclusory

---

[1] The Second Circuit has consistently adhered to the United States Supreme Court's seminal "plausibility" standard set forth in *Iqbal*. *See, e.g.*, *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017); *Christine Asia Co. v. Ma*, No. 16-2519-CV, 2017 WL 6003340, at *1 (2d Cir. Dec. 5, 2017); *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 401 (2d Cir. 2015); *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp.*, *PLC*, 709 F.3d 109, 119-20 (2d Cir. 2013).

allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir.2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir.2008) (internal quotation marks omitted)). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

With respect to *pro se* litigants, it is well-established that "[*p*]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)(per curiam)). *See also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (same)*; Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants); *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (Where the plaintiff proceeds *pro se*, a court is "obliged to construe his pleadings liberally.") (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[].").

Despite being subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). *See also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[O]nly

a complaint that states a plausible claim for relief survives a motion to dismiss . . . .")(citation and internal quotation marks omitted).

Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). Nor may the Court "invent factual allegations that [the plaintiff] has not pled." *Id.*

## II. <u>FACTUAL ALLEGATIONS</u>

Plaintiff alleges that on October 28, 2016, he had a scheduled appointment to be examined by a physician at UCONN Hospital. *See* Doc. 1 ("Complaint"), at 3, ¶ 1. On that date, Plaintiff was incarcerated at Corrigan Correctional Institution ("Corrigan"). *Id.* at 6, ¶¶ 34-35. Correctional Officers Ayotte and Olsen placed physical restraints upon Plaintiff in preparation for his transport to UCONN Hospital. *Id.*, at 3, ¶ 2.

After Officers Ayotte and Olsen loaded Plaintiff into the prison van, Plaintiff asked the officers to buckle his seatbelt for him because he was unable to do so while wearing restraints. *Id.*, ¶ 3. Ayotte allegedly replied that Plaintiff "really didn't need a seatbelt" in view of the fact that the hospital was only "a short distance" from the prison. *Id.*, ¶ 4. Moreover, Ayotte added, perhaps in jest, "Why would you need a seatbelt; you don't believe in my driving." *Id.*, ¶ 5. Neither Ayotte, nor Olsen buckled Plaintiff's seatbelt.

At approximately 7:00 a.m., Officers Ayotte and Olsen began the drive to UCONN Hospital. *Id.*, at 4, ¶ 6. During the trip, Plaintiff observed that the two officers were allegedly "constantly sharing, and showing each other video clips on their personal cell phones. *Id.*, at 4, ¶ 7. Concerned for his safety, Plaintiff requested that they cease this distracting activity while driving the van, but

Ayotte and Olsen "simply ignored" these requests.  *Id.*, ¶¶ 8-9.

Plaintiff and the two officers arrived in the van at UCONN Hospital at approximately 8:00 a.m. *Id.*, ¶ 10.  Ayotte and Olsen escorted Plaintiff into the hospital for his appointment.  *Id.*, ¶ 11. After the appointment concluded, at approximately 11:15 a.m., Ayotte escorted Plaintiff back to the prison van.  *Id.*, ¶ 12.  Ayotte once again did not buckle Plaintiff's seatbelt after placing him in the back of the van.  *Id.*, at 5, ¶ 21.  Ayotte then started up the van and "continue[d] to ingauge [sic] in his personal cell phone [use]" while waiting for Olsen to return to the van.  *Id.*, at 4, ¶¶ 13-14.

As Ayotte and Plaintiff waited in the prison van, John Doe, who was allegedly working "first shift" as a truck driver for UCONN Hospital, drove a UCONN truck into the area of the loading dock where the prison van was parked.  *Id.*, at 2; at 4, ¶ 15.  Plaintiff noticed that John Doe began to back his truck up toward the loading dock where the prison van was parked.  *Id.,* at 4, ¶ 16. Meanwhile Ayotte continued to use his cell phone so failed to see Doe backing the truck towards the van.  *Id*., ¶ 18.  Plaintiff yelled a warning to the "distracted" Ayotte, informing him that the prison van was "going to [be] hit" by the truck.  *Id.*, at 5, ¶ 19.

Before Ayotte could take any evasive action, Doe ran the truck into the right side of the prison van.  *Id.*, at 5, ¶ 20.  Plaintiff was unable to brace himself for the impact due to his physical restraints and lack of a seatbelt.  *Id.*, ¶ 21.  Consequently, he bounced "uncontrollably" around the van, thereby causing injury to his lower back.  *Id.*, ¶¶ 21-22, and at 6-7, ¶¶ 40-43.

John Doe parked the truck and exited from it.  *Id.*, at 5, ¶ 24.  Someone called the Farmington Police Department.  *Id.*, ¶ 25.  Officer Olsen then arrived at the van and was informed about the collision.  *Id.,* ¶ 26.  Olsen then asked Plaintiff if he needed medical attention, and Plaintiff indicated that he did.  *Id.*, ¶¶ 27-28.  Although Olsen noted at that time that he saw "nothing wrong with the

Plaintiff," he and Ayotte escorted Plaintiff to the emergency room at UCONN Hospital. *Id.*, ¶¶ 28-29. Both officers blamed Plaintiff for making them late in returning to Corrigan. *Id.*, ¶ 31. At about 12:40 p.m., the two officers decided not to wait any longer for Plaintiff to be seen by a physician in the emergency room. *Id.*, at 6, ¶ 32. They loaded him into the prison van and once again refused to buckle his seatbelt for the ride back to Corrigan, "in violation" of the Department of Corrections ("DOC") "Administrative Directive 6.4."[2] *Id.*, at 6, ¶¶ 33-34.

Upon returning to Corrigan at around 2:30 p.m., Plaintiff was taken to the medical unit for examination. *Id.*, ¶ 35. Plaintiff explained to medical personnel that he felt discomfort in his lower back and neck. *Id.*, ¶ 37. Staff instructed Plaintiff to submit a request to return to the medical unit if he felt "more discomfort" in the next several days. *Id.*, ¶ 38.

Four days later, on November 1, 2016, Corrigan prison officials transferred Plaintiff to MacDougall-Walker. *Id.*, ¶ 39. Plaintiff immediately submitted a request to be seen in the medical department due to "discomfort in his lower back and neck." *Id.*, ¶ 40. A medical staff member met with Plaintiff and referred him to be seen by a physician. *Id.*, ¶¶ 41-42.

At his appointment with the physician at MacDougall-Walker, Plaintiff stated that he felt pain in his lower back and neck ever since the accident in the prison van on October 28, 2016. *Id.*, at 7, ¶ 43. The doctor prescribed Tylenol, Baclofen and a muscle rub. *Id.*, ¶ 44. Plaintiff states that he has been taking and/or utilizing these prescribed medications since November 2016. *Id.*, ¶ 45. The physician did not prescribe physical therapy, but a nurse instructed Plaintiff to do exercises in the gym and "outside recreation therapy exercises." *Id.*, ¶¶ 46-47. Plaintiff alleges that the exercises

---

[2] DOC Administrative Directive 6.4 mandates that all transportation staff and inmates wear seat belts when in a prison vehicle en route to an outside appointment. For the full text of this Directive, *see* Part III.A.1.a., *infra*.

have not relieved his pain. *Id.*, ¶47.

## III. <u>ALLEGED CLAIMS</u>

Plaintiff sues all defendants in their individual capacities only. For relief, he seeks monetary damages. In his Complaint, he attempts to state the claims described below.

**A.** <u>Section 1983 Claims</u>

**1.** <u>Claims Against Ayotte and Olsen</u>

**a.** <u>Deliberate Indifference to Safety</u>

Under 42 U.S.C. § 1983, an injured party may bring an action to impose liability against "[e]very person" who, acting under color of state law, violates another person's federally protected rights.[3] Plaintiff brings his § 1983 claims against Officers Ayotte and Olsen, asserting that his constitutional rights have been violated by these two state actors "under color of state law." State officials are "persons" under § 1983 who may be held personally liable when sued as *individuals* for actions they take under "color of state law."[4]

---

[3] Section 1983 of Title 42 of the United States Code provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

[4] Conversely, a state official may *not* be sued for money damages in his *official* capacity for his or her actions in office because such actions essentially constitute actions against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983). "The Eleventh Amendment precludes suits against states unless the state expressly waives its immunity or Congress abrogates that immunity." *Li v. Lorenzo*, No. 16-3530, 2017 WL 4410586, at *1 (2d Cir. Oct. 4, 2017) (citing *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 94-95 (2d Cir. 2002)). "This includes suits against state officials in their official capacities." *Li*, 2017 WL 4410586, at *1 (citing

In the case at bar, Plaintiff alleges that Officers Ayotte and Olsen violated his Eighth Amendment right to protection "from cruel and unusual punishment." Doc. 1, at 3, ¶ D. The Eighth Amendment imposes constitutional boundaries on conditions of imprisonment so that the "unnecessary and wanton infliction of pain" upon a prisoner constitutes "cruel and unusual punishment."[5] *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). A prison official violates the Eighth Amendment when the following two requirements are met: (1) the alleged conditions or "punishment" are "objectively, sufficiently serious," and (2) the official possesses a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

In particular, with respect to health and safety, "[t]o succeed on an Eighth Amendment deliberate indifference claim, a plaintiff must satisfy two requirements[:] [h]e must show both that the danger posed by the indifference he alleges is 'sufficiently serious' and that the defendant has acted with 'deliberate indifference to inmate health or safety' in failing to address this danger." *Smith v. Fischer*, 500 F. App'x 59, 61 (2d Cir.2012) (citing *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir.2002)). *See also Young v. Choinski*, 15 F. Supp. 3d 172, 182 (D. Conn. 2014). The question under the Eighth Amendment is thus "whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." *Farmer*, 511 U.S. at 843 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

As to the subjective element of the claim – a prison official's subjective intent – "a plaintiff

---

*Davis v. New York*, 316 F.3d 93, 101-02 (2d Cir. 2002)).

[5] Similarly, the denial of "the minimal civilized measure of life's necessities" to a prisoner in confinement may violate the Eighth Amendment. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

must show something more than mere negligence." *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir.2000) (quotations omitted). "An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Cuoco*, 222 F.3d at 107 (quotations and citations omitted).

In general, the prisoner is not required to have suffered actual physical injury before obtaining court-ordered correction of objectively inhumane conditions. *Farmer*, 511 U.S. at 845. As the Supreme Court stated, it would be "odd" to deny relief to inmates "who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them." *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). The deliberate indifference standard in a "failure to protect" context does not include an actual injury requirement, regardless of whether the complaining prisoner is seeking injunctive relief or damages. *See, e.g., Jackson v. Goord,* 664 F. Supp. 2d 307, 316 (S.D.N.Y. 2009) ("A prisoner need not show actual injury, as 'the Eighth Amendment protects against sufficiently imminent dangers as well as current unnecessary and wanton infliction of pain and suffering.'") ( quoting *Helling,* 509 U.S. at 34); *Smolen v. Fischer,* No. 12 CIV. 1856 PAC AJP, 2012 WL 3609089, at *4 (S.D.N.Y. Aug. 23, 2012) (same). *See also Altayeb v. Chapdelaine*, No. 3:16-CV-00067 (CSH), 2016 WL 7331551, at *3 (D. Conn. Dec. 16, 2016) ("In assessing whether [inmate] Altayeb faced an excessive risk of serious harm, this Court must look at the facts and circumstances of which the official was aware at the time he acted or failed to act. The focus is on the existence of a substantial risk of serious harm, rather than the actual injuries suffered in an attack.") (citations and internal quotation marks omitted); *Medina v. Black,*

9

No. 3:15-CV-1371 (VLB), 2016 WL 386030, at *5 (D. Conn. Feb. 1, 2016) ("[A] prisoner seeking 'a remedy for unsafe conditions [need not] await a tragic event [such as an] actua[l] assaul[t] before obtaining relief.' ") (quoting *Farmer*, 511 U.S. at 845).[6]

Although Eighth Amendment claims do not have an explicit injury component, in a § 1983 action, '[i]t is well-settled that '[a]bsent a showing of causation [of the plaintiffs' injuries by the defendants' unconstitutional acts] and actual injury, a plaintiff is entitled only to nominal damages.'" *Warren v. Pataki*, 823 F.3d 125, 141 (2d Cir. 2016) (quoting *Miner v. City of Glens Falls*, 999 F.2d 655, 660 (2d Cir.1993)), *cert. denied sub nom. Brooks v. Pataki*, 137 S. Ct. 380, 196 L. Ed. 2d 300 (2016); *Jackson v. Goord*, 664 F. Supp. 2d 307, 317 (S.D.N.Y. 2009) (in context of inmate's claim of deliberate indifference to inmate health or safety, court "note[d] that plaintiffs in section 1983 actions are 'entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury.'") (quoting *Amato v. City of Saratoga Springs*, 170 F.3d 311, 317 (2d Cir.1999) and collecting cases).

In the case at bar, Plaintiff contends that Officers Ayotte and Olsen neglected to buckle his seatbelt prior to driving him in the prison van to and from UCONN Hospital. In addition, Plaintiff was not buckled up when the UCONN Hospital truck hit the side of the prison van as it idled in the loading dock at the hospital. Plaintiff states that the failure to buckle his seatbelt in these situations constituted deliberate indifference to his safety in violation of the Eighth Amendment. He also alleges that Officers Olsen and Ayotte "denied the Plaintiff [a] seatbelt" in violation of State of

---

[6] *Cf. Davis v. Chapdelaine*, No. 3:16-CV-268 (VLB), 2017 WL 3222531, at *4 (D. Conn. July 28, 2017) (requiring actual injury to find objective component of Eighth Amendment failure to protect claim where objective risk of injury from placing prisoner in cell with combative cellmate was not provable absent showing of damages from altercation) (collecting cases).

Connecticut Administrative Directive 6.4." *Id.*, at 6, ¶ 33.

The Supreme Court has held that prisoners have no right to be housed in comfortable surroundings. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1980) (harsh or restrictive conditions are part of the penalty criminal offenders pay for their crimes). A prisoner's conditions of confinement, however, must meet "minimal civilized measures of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). This means that prison officials are required to provide for inmates' basic human needs – e.g., food, clothing, shelter, medical care, and *reasonable safety*." *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 200 (1989) (emphasis added).

As described above, to state an Eighth Amendment claim, the prisoner must meet both the objective and subjective components of the "deliberate indifference" standard. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154 (1995). The inmate must allege facts to establish that the alleged deprivation was objectively "sufficiently serious." In addition, he must show that the defendants were subjectively aware of a substantial risk that the inmate would suffer serious harm as a result of their actions or inactions. *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir.2006). "More specifically, a prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hathaway*, 37 F.3d at 66 (quoting *Farmer*, 511 U.S. at 837). The fact that a prison official fails to alleviate a significant risk that he should have but did not perceive does not constitute deliberate indifference. *Farmer*, 511 U.S. at 838.

The Second Circuit has held that with respect to transporting prisoners on a prison bus, "the

failure to provide a seatbelt is not, in itself [a] sufficiently serious" deprivation to meet the objective prong of the Eighth Amendment standard. *See Jabbar v. Fischer*, 683 F.3d 54, 58 (2d Cir. 2012) ("A bus seatbelt is not a life[] necessity.") (internal quotation marks and citation omitted). "A correctional facility's use of vehicles without seatbelts to transport inmates, when based on legitimate penological concerns rather than an intent to punish, is reasonable." *Id.*

More recently, however, courts examining *Jabbar* have distinguished its holding to find that lack of a seatbelt can comprise a sufficiently serious deprivation, depending on the particular facts of the case. For example, in *Torres v. Amato*, 22 F.Supp. 3d 166 (N.D.N.Y. 2014), the plaintiff prisoner was transported in a prison van for a court appearance. The van was operated by an employee of the Montgomery County Sheriff's Department, who did not place the plaintiff in a seat belt. As the van was driven back to the Montgomery County Correctional Facility, the driver executed a sharp left turn, which caused plaintiff to be ejected from the vehicle and sustain fatal injuries to his head.

The *Torres* court commenced its analysis of the inmate's Eighth Amendment claim, now brought by his estate, noting that the Second Circuit specified: "As to the objective element, there is no 'static test' to determine whether a deprivation is sufficiently serious; '[t]he conditions themselves must be evaluated in light of contemporary standards of decency.'" 22 F. Supp. 3d at 172 (quoting *Jabbar*, 683 F.3d at 57). Evaluating the particular facts at issue, the *Torres* court allowed the Eighth Amendment claim to proceed, denying summary judgment, by stating that the evidence created genuine issues of material fact. The *Torres* observed that in *Jabbar*:

> [T]he Second Circuit held that the plaintiff "did not allege that there was any intent to punish or other improper motivation for the lack of inmate seatbelts on the . . . bus, and we cannot reasonably infer such intent. [The plaintiff] did not allege that

defendants knew of any excessive risk to inmate safety. . . . Thus, without more, the complaint failed to allege sufficient facts to state a plausible claim."

22 F. Supp. 3d at 173-74.

The court in *Torres*, however, distinguished *Jabbar* by noting that there were additional facts present in the instant case. In reaching its decision, the *Torres* court found that Plaintiff was unable to secure his own seatbelt because he was "restrictively confined in handcuffs and ankle shackles, with chains that are fed through a "black box" that severely limits movement." *Id.* at 175. Moreover, at the time of the accident, the defendant driver was "driving the vehicle at an unsafe rate of speed" and "took a fast sharp turn." *Id.* at 176. Therefore, "[u]nlike the plaintiff in *Jabbar*, Plaintiff ha[d] alleged and put forth evidence of more than simply failing to provide him with a seatbelt." *Id.* at 175-76. Plaintiff had alleged that the defendant "was operating the van in a reckless manner, knowing that the inmates were not restrained with seatbelts." *Id.* at 176. Moreover, the defendant even knew of "an earlier incident in which an inmate was injured during a motor vehicle accident and the inmate was not wearing a seatbelt." *Id.* "As such, the Court f[ound] that this case [was] distinguishable from *Jabbar* in which the plaintiff merely alleged that his rights were violated when he was transported without being restrained by a seatbelt." *Id.*

In addition, the *Torres* court discussed the Fifth Circuit's similar holding in *Rogers v. Boatright*, 709 F.3d 403 (5th Cir.2013), in which the plaintiff alleged that he was seriously injured when a prison van in which he was riding stopped abruptly. As in the case at bar, the prisoner in *Rogers* alleged that he was not provided with a seatbelt and he could not protect himself when the prison van stopped abruptly because he was shackled in leg irons and handcuffs. 709 F.3d at 408. Upon initial screening, the district court threw out the claim as failing to allege a plausible claim that the driver of the van acted with deliberate indifference to his safety. *Id.* Upon appeal, however, the

the Fifth Circuit reversed, reinstating the claim, by distinguishing the outcome in *Jabbar* to find that

the *Rogers* case involved the additional allegation "that the prisoner was injured when the defendant

operated the prison vehicle recklessly knowing of the danger to the prisoner." *Id.  See also Brown

v. Fortner*, 518 F.3d 552, 559-60 (8th Cir. 2008) (holding that defendant's refusal to secure prisoner's

seatbelt combined with the defendant's reckless driving was sufficient to conclude that there was a

substantial risk of harm to the plaintiff and that the defendant knew of and disregarded the

substantial risk of harm).

Recently, in *Miller v. Doe*, No. HHDCV135037369, 2017 WL 6504349, at *3 (Conn. Super.

Ct. Nov. 27, 2017), a Connecticut Superior Court held that a prisoner stated a valid Eighth

Amendment deliberate indifference claim against a correctional officer for failing to secure him with

a seat belt in a prison vehicle and driving recklessly.  In *Miller*,  the plaintiff was transported by the

defendant correctional officer to MacDougall-Walker from the University of Connecticut Hospital.

During the trip, he was fully restrained with handcuffs, a tether chain, and shackles, but not secured

with a safety seatbelt. As the result of a crash, he was violently jerked off the back seat, hit steel

structures in the vehicle, blacked out, and suffered injuries.  2017 WL 2452131, at *2.  Denying the

defendant's motion to dismiss the claim, the court summarized the relevant facts upon which it

relied:

> In the present case, there are six aspects of the plaintiff's allegations that this court
> finds relevant: (1) that insufficient space existed in the rear of the vehicle for the
> plaintiff to sit in an upright position during transportation; (2) that defendant directed
> the plaintiff to get into the rear seat and put his feet up on the seat; (3) that the
> defendant failed to ensure that the plaintiff was securely restrained; (4) that the
> plaintiff specifically advised the defendant that this was unsafe and that he was
> concerned for his well-being; (5) that administrative directives specifically require
> that the plaintiff be secured by seat belts; and (6) that the defendant drove erratically
> and at an excessive rate of speed knowing the plaintiff was not secured.

2017 WL 6504349, at *3.  The court also noted that the defendant disregarded the risk of physical

safety to the prisoner, "specifically in his failure to abide by DOC administrative directives requiring

appropriate seat belt restraints." *Id.*  Moreover, "the plaintiff specifically alleged that he informed

the defendant of his concerns regarding his own safety and that the defendant was alleged not to be

merely speeding but rather 'driving erratically.'"  *Id.,* at *4.

   Examining the facts alleged in the case at bar, reading them in the light most favorable to

Plaintiff, the Court finds that Plaintiff states a plausible Eighth Amendment "deliberate indifference

to safety"  claim against Officers Ayotte and Olsen.  Although failure to provide a seatbelt is not, in

and of itself, sufficient to constitute a sufficiently serious risk to health, there are  additional relevant

facts that allow this claim to survive at the screening stage.

   First, as in *Miller*, when  Officers Ayotte and Olsen loaded Plaintiff into the prison van,

Plaintiff explicitly asked the officers to buckle his seatbelt because he was unable to buckle it due

to physical restraints for transport.  Doc. 1, ¶¶ 2- 3.  Neither officer complied.  In fact, instead of

hooking the seatbelt, Officer Ayotte made the  dismissive comment that the hospital was only "a

short distance" from the prison, and asked, "Why would you need a seatbelt; you don't believe in my

driving." *Id.*, ¶¶ 4-5.  Such comments reveal Ayotte's knowledge that Plaintiff felt concerned about

remaining unbuckled in his seat, but that Ayotte was not willing to buckle Plaintiff's belt.

   Furthermore, during the trip to the hospital, Plaintiff observed that the officers shared videos

on their personal cell phones with each other.[7]  *Id.*, ¶ 7.  Because he was concerned for his safety,

_____

   [7] Such behavior may be reckless and potentially even  criminal, in light of Connecticut's state
law, Conn. Gen. Stat. § 14-296aa, which  forbids cell phone usage while operating a vehicle.  That
statute states, in pertinent part:

   [N]o person shall operate a motor vehicle upon a highway, as defined in section 14-1,

Plaintiff asked the officers to cease this distracting activity while driving the van; but Ayotte and Olsen ignored his requests. *Id.*, ¶¶ 8-9. Driving the van while looking at cell phone videos created a substantial risk of harm to the van's passengers, including Plaintiff who had flagged this danger by requesting that the officers stop such risky behavior.

As Plaintiff noted, the failure to provide him with a seatbelt violated DOC Administrative Directive 6.4. *Id.* The DOC is governed by its own internal written policies codified as "Administrative Directives." *Taylor v. Lantz*, No. CV084039793, 2010 WL 1508290, at *4 (Conn. Super. Ct. Mar. 8, 2010), *aff'd*, 129 Conn. App. 437 (2011). A prison official, acting within the employ of the DOC, has the duty to comply with its directives.[8]

---

while using a hand-held mobile telephone to engage in a call or while using a mobile electronic device. An operator of a motor vehicle who types, sends or reads a text message with a hand-held mobile telephone or mobile electronic device while operating a motor vehicle shall be in violation of this section . . .

*See also, e.g.*, *Kolashuk v. Hatch*, No. CV176028727S, 2017 WL 6262393, at *2 (Conn. Super. Ct. Nov. 9, 2017) (holding that plaintiff "alleged sufficient facts to state a claim for statutory recklessness under § 14-295" by alleging that the defendant "accelerat[ed] his vehicle at a high rate of speed, while using a cell phone in his hand, on a residential road"); *Rondeau v. Roane*, No. WWMCV126005147S, 2012 WL 5519608, at *2-3 (Conn. Super. Ct. Oct. 24, 2012) ("[C]ount three of the plaintiff's complaint states a claim for common-law recklessness because it alleges that the defendant drove his vehicle while talking on his cell phone, and that the collision and resulting injuries were caused by the reckless misconduct and/or the conscious, reckless disregard of then-existing facts and circumstances by the defendant, including the fact that he was driving while talking on the phone.").

[8] *See Smith v. Adm'r, Unemployment Comp. Act*, No. CV155035707S, 2016 WL 888047, at *4 (Conn. Super. Ct. Feb. 8, 2016) (The court upheld the discharge of the plaintiff driver/employee for "wilful misconduct by committing multiple violations of the employer's cellular telephone usage policy" where the driver "periodically held and looked at his cellphone while driving the employer's vehicle . . . , including while the vehicle was stopped at a stop sign and also while he was waiting to exit a parking lot into traffic ... Regardless of whether the [plaintiff] was calling, texting or using his cell phone for some other purpose, the employer prohibited the [plaintiff] from using a cell phone while operating its vehicle.").

The State of Connecticut Department of Correction Administrative Directive 6.4 specifically mandates that "[t]he Department of Correction shall transport and supervise inmates within the community in a safe and secure manner." D.O.C. Admin. Dir. 6.4, ¶1. In particular, "[e]ach [prison] facility vehicle, routinely used to transport inmates, shall be equipped with . . .. seat belts." *Id.* ¶ 6.A. ("Equipment'). "Transportation staff and each inmate in all vehicles . . . *shall use seat belts* while en route.*" Id.* ¶ 19.A. ("Safety. Seat Belts.") (emphasis added).

Furthermore, the state of Connecticut has a criminal statute which prohibits driving during cell phone usage. Conn. Gen. Stat. § 14-296aa states, in pertinent part:

> [N]o person shall operate a motor vehicle upon a highway, as defined in section 14-1, while using a hand-held mobile telephone to engage in a call or while using a mobile electronic device. An operator of a motor vehicle who types, sends or reads a text message with a hand-held mobile telephone or mobile electronic device while operating a motor vehicle shall be in violation of this section . . .

DOC Administrative Directive 6.4 has a similar cell phone provision, stating that "State issued cell phones shall not be used by the driver of a moving state vehicle unless an emergency situation arises, at which point the vehicle shall be safely stopped while the emergency call is made." *Id.* ¶ 6.A. Moreover, even if the driver uses his personal phone, instead of a "state issued" one, with respect to driving, "[e]ach vehicle shall be driven in a safe and defensive manner" with the driver observing "state laws and regulations" and employing "safe driving practices." *Id*. ¶ 6.E.

As to the objective prong of his "deliberate indifference to safety claim," Plaintiff has alleged facts to show that he was transported without seat belts, in violation of the DOC's own Administrative Directives, by officers who were willfully engaged in distracting cell phone usage throughout the trip to the hospital. Operating a motor vehicle while reviewing videos on a cell phone creates a substantial risk of serious harm to the vehicle's passengers, a risk that Plaintiff repeatedly

brought to the officers' attention by asking to have his seat belt hooked and for the officers to stop looking at the cell phone videos. Such reckless conduct also violates both Connecticut state law, Conn. Gen. Stat. § 14-296aa, and the D.O.C.'s Administrative Directive 6.4 on safe driving.

Construing the facts alleged in the light most favorable to Plaintiff, such conduct may be viewed as "reckless" – "a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man." *Sheimon v. Lafayette Bank & Trust Co.*, 4 Conn. App. 39, 45 (1985) (citations omitted). Acting recklessly, the driver "must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent." *Id.* (citations omitted). Driving through traffic, transporting a prisoner, looking at videos instead of the road, suggests excessive disregard for that prisoner's safety.

In particular, Ayotte and Olsen were aware of Plaintiff's specific requests that they hook his seatbelt in the van. They ignored his requests. Doc. 1, at 3, ¶ 5. Ayotte then drove the Plaintiff to the hospital, willfully engaging in the distraction of sharing videos with Olsen on their respective cell phones. Olsen also participated in this distracting activity, knowing the vehicle was in motion en route to the hospital and that showing videos to Ayotte, the driver, may lead to an accident. Olsen shared the obligation to keep Plaintiff safe and disregarded his duty, sharing cell phone videos with Ayotte as he drove. Plaintiff thus states sufficient facts to allege that on the drive to the hospital, the officers knowingly subjected Plaintiff to "a substantial risk of serious harm" and "fail[ed] to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

In contrast, Ayotte's cell phone use while the van was parked at the hospital does not rise to the level of recklessness. Granted, the vehicle was parked near a busy loading dock and Ayotte was

immersed in using his cell phone, failing to heed the activity of neighboring vehicles and even Plaintiff's shouted warnings of an impending collision. Doc. 1, at 4, ¶¶ 13-14; at 5, ¶ 19. Unfortunately, Plaintiff was unable to brace himself for the impact of the truck in light of his physical restraints and, resultingly, sustained permanent injuries to his lower back. *Id.*, at 5, ¶ 22; at 3, ¶ 1. Nonetheless, when a vehicle is parked, the driver may reasonably believe it is safe to use his phone. After all, the vehicle is stopped and out of traffic. At most, becoming immersed in one's phone while parked off the road may be viewed as negligent failure to observe the surrounding circumstances.

To prove the subjective element of an Eighth Amendment claim, namely, an accused prison official's subjective intent, "a plaintiff must show something more than mere negligence." *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir.2000) (quotations omitted). Plaintiff thus fails to state a plausible Eighth Amendment claim with respect to Ayotte and Olsen during the time the vehicle was parked at the loading dock.[9]

Plaintiff makes no allegations regarding cell phone use on the return trip from the hospital to Corrigan. He simply mentions that he was once again denied the use of a seat belt. Doc. 1, at 6, ¶ 34 ("While en route back to the Corrigan Facility, the plaintiff had no proper harness as he requested to the defendants," Ayotte and Olsen.). Plaintiff presents no facts to establish that Ayotte or Olsen drove recklessly back to Corrigan. As the Second Circuit clarified in *Jabbar*, "the failure to provide a seatbelt is not, in itself [a] sufficiently serious" deprivation to meet the objective prong of the Eighth Amendment standard because such a seatbelt "is not a life[ ] necessity." 683 F.3d at

---

[9]The Court notes that Olsen was not even in or at the van during the time it was parked at the loading dock so could not have caused the accident or Plaintiff's injuries.

58.

Construing Plaintiff's *pro se* Complaint liberally, interpreting the allegations to raise the strongest arguments that they suggest, Plaintiff's Eighth Amendment claim against Officers Ayotte and Olsen for deliberate indifference to his safety may proceed with respect to the drive to the hospital. Given the present facts, which exceed the limited ones presented in *Jabbar*, the failure to provide Plaintiff with seatbelt protection, combined with reckless sharing of cell phone videos while operating the vehicle, in violation of an explicit DOC Administrative Directive and state law, plausibly violated Plaintiff's Eighth Amendment rights. His claim will be dismissed with respect to the times during which the prison van was parked at the hospital loading dock and during the return trip, when defendants drove Plaintiff back to Corrigan.

b.      **Deliberate Indifference to Medical Needs**

Plaintiff alleges that after the accident involving the prison van, Officers Olsen and Ayotte refused to permit him to remain in the emergency room until he received medical treatment. Plaintiff contends that this conduct constituted deliberate indifference to his medical needs.

The Eighth Amendment's prohibition on cruel and unusual punishment protects against deliberate indifference to a prisoner's serious medical needs by prison officials. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To demonstrate deliberate indifference to medical needs, a plaintiff must allege harmful acts or omissions that either (1) deny, or unreasonably delay, access to needed medical care or (2) wantonly cause infliction of unnecessary pain. *Id.* at 104–06. Accordingly, not all failures by prison staff to provide medical care rise to the level of a constitutional violation. *Id.* Instead, to support a § 1983 claim, the complained-of conduct must "shock the conscience" or constitute a "barbarous act." *Klemonski v. Semple*, No.

3:09-cv-1611(VLB), 2010 WL 2011142, *3 (D. Conn. May 19, 2010).

The deliberate indifference standard contains two prongs. First, "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Second, subjectively, the defendant must have been aware of a substantial risk that the inmate would suffer serious harm by defendant's act or omission. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). *See also Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006); *Hathaway*, 37 F.3d 63, 66 (2d Cir. 1994). "Although less blameworthy than harmful action taken intentionally and knowingly, action taken with reckless indifference is no less actionable." *Salahuddin*, 467 F.3d at 280. "The reckless official need not desire to cause such harm or be aware that such harm will surely or almost certainly result." *Id.* "Rather, proof of awareness of a substantial risk of the harm suffices." *Id.* (citation omitted). "But recklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent." *Id.*

In the case at bar, Plaintiff bases his claim for deliberate indifference to his serious medical needs on the failure of Ayotte and Olsen to wait for him to be examined by the emergency room doctor at UCONN Hospital after the truck collided with the prison van. Doc. 1, at 5-6, ¶¶ 30-32. After this collision, Olsen "asked Plaintiff if he needed medical attention." *Id.*, at 5, ¶ 27. Olsen then commented that he saw "nothing wrong with the Plaintiff," but still accompanied Ayotte in escorting Plaintiff to the emergency room at the hospital. *Id.*, ¶¶ 28-29. The officers waited, to no avail, for over an hour for an emergency room doctor to become available. They then decided to return to Corrigan, where Plaintiff could also be examined by medical personnel. *Id.*, at 6, ¶ 32. Plaintiff

acknowledged that medical personnel examined him when Ayotte and Olsen returned him to Corrigan, approximately three hours after the accident. *Id.* ¶ 35. Plaintiff described his symptoms as discomfort in his lower back and neck. *Id.* ¶ 37. Medical staff instructed Plaintiff to return to the medical unit if his discomfort increased over the next few days. *Id.*, ¶ 38. Four days later, on November 1, 2016, Plaintiff was transferred to MacDougall-Walker and sent a written request for further medical assistance. *Id.* ¶ 39. He was thereafter "seen by medical staff." *Id.*

Complaints of discomfort do not rise to the level of a serious medical need. *See Alston v. Delpeschio*, 3:15cv1672 (CSH), 2016 WL 3211805, at *4 (D. Conn. June 9, 2016) (pain and discomfort from exposure to a chemical agent and tight in-cell restraints were not sufficiently serious to meet objective component of Eighth Amendment standard); *Salaam v. Adams*, 03-CV-0517, 2006 WL 2827687, at *10 (N.D.N.Y. Sept. 29, 2006) (approving and adopting Report-Recommendation of Lowe, *M.J.*) (prisoner's sporadic and moderate complaints of lower back pain requiring pain relievers and physical therapy, even when considered together with other medical and mental health conditions, did not constitute serious medical condition); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 310 (S.D.N.Y. 2001) (mild or moderate pain or discomfort of "a cut finger, even where skin is 'ripped off,'" was insufficient to establish objectively serious medical need); *Bonner v. New York City Police Dep't*, No. Civ.A. 99-3207, 2000 WL 1171150, at *4 (S.D.N.Y. Aug. 17, 2000) (no serious medical need where plaintiff was unable to close one of his fingers and had discomfort due to allegedly inadequate treatment of his injured hand). In short, as the Second Circuit described in *Hathaway v. Coughlin*, to constitute an objectively serious injury, pain must rise to the level of "a condition of urgency, one that may produce death, degeneration, or *extreme pain*." 99 F.3d at 553 (emphasis added).

As to the defendant officers' subjective knowledge of Plaintiff's medical needs, according to the Complaint, at the time of the accident, Plaintiff did not describe his injuries to the officers. Rather, he insisted on being examined by a doctor, but did not elaborate on physical pain or injuries. According to Plaintiff, Olsen stated that he did not see any signs that Plaintiff was injured. Doc. 1, at 5, ¶ 28. In addition, approximately three hours after the accident, Plaintiff complained only of discomfort to medical officials at Corrigan. *Id.*, at 6, ¶¶ 36-37. Plaintiff does not allege that he sought further treatment at Corrigan prior to his transfer to MacDougall-Walker four days later, on November 1, 2016.

Under these circumstances, the Court concludes that Plaintiff has failed to allege that Officers Ayotte and Olsen were deliberately indifferent to a serious medical need of Plaintiff when they decided to transport him back to Corrigan (*i.e.*, before emergency room personnel could examine him at UCONN Hospital). Any claims he may have made regarding discomfort at that time failed to rise to the level of a life threatening, degenerative, or extremely painful injury.

Furthermore, even if Officers Olsen and Ayotte were indifferent in deciding to transport Plaintiff back to Corrigan before he could be examined in the emergency room at UCONN, they did not prevent him from being seen by medical staff at Corrigan immediately after his return to that facility. Thus, they did not significantly delay Plaintiff's treatment by medical officials after the accident.[10] To prove deliberate indifference to a serious medical need under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), not only must a plaintiff must prove defendants' knowledge of an excessive risk to his health, plaintiff must show that the defendant prison officials denied him access to medical

---

[10] Given the usual exigent circumstances, high volume of patients, and prolonged delays in emergency rooms, it is certainly possible that Plaintiff's medical care at Corrigan was provided as quickly as the care he might have received at the hospital.

personnel or prevented him from receiving recommended treatment. In the case at bar, the officers had no actual knowledge of a "serious medical need." Moreover, even if Plaintiff communicated an actual serious injury to them, they noted he was not receiving medical treatment in a timely fashion at the hospital and returned Plaintiff to Corrigan where he did receive medical treatment.

Consequently, although the Court is sympathetic to Plaintiff regarding his discomfort and pain, he has failed to allege sufficient facts to meet both the objective and subjective prongs of the Eighth Amendment standard regarding serious medical needs. Accordingly, his Eighth Amendment deliberate indifference to medical needs claim will be dismissed.

### 2. Claim against John Doe

John Doe is identified as the UCONN Hospital employee who, on October 28, 2016, drove a truck and backed it into the prison van at the hospital's loading dock. Plaintiff claims that he suffered lower back injuries as a result of the accident. Although a state university employee may be a "state actor" subject to claims in his individual capacity for monetary relief under § 1983, Plaintiff does not assert that Doe engaged in conduct "under color of state law".[11] Nonetheless, were this Court to construe Plaintiff's Complaint to allege a § 1983 claim against Doe, that claim would be fatally defective.

There are no facts in this case to suggest that the conduct of John Doe in backing up too fast and hitting the prison van was anything more than negligent. A negligent motor vehicle accident, in and of itself, is not actionable under 42 U.S.C. § 1983. *Carrasquillo v. City of New York*, 324 F.

---

[11] *See, e.g., Rehman v. State Univ. of New York at Stony Brook*, 596 F. Supp. 2d 643, 654 (E.D.N.Y. 2009) ("State employment has generally been deemed sufficient to render the defendant a 'state actor.' ")

Supp. 2d 428, 436 (S.D.N.Y. 2004). Otherwise, "any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983." *Id.* at 436-37 (citation and internal quotation marks omitted). "[N]either the Constitution, nor any federal statute guarantees a prisoner's right to non-negligent driving by government employees." *Id.* at 436.

The Supreme Court has held that injuries resulting from a state employee's lack of due care do not implicate the Constitution. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986) ("Respondents' [prison officials'] lack of due care . . . simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent."); *Daniels v. Williams*, 474 U.S. 327, 336 (1986) (Due Process Clause of the Fourteenth Amendment "d[id] not afford [inmate] a remedy" for injuries negligently inflicted by a correctional deputy). "[M]ere negligence is insufficient as a matter of law to state a claim under section 1983." *Poe v. Leonard*, 282 F.3d 123, 145 (2d Cir. 2002) (citation omitted).

To the extent that Plaintiff attempts to claim that on October 28, 2016, truck driver John Doe negligently or carelessly backed the UCONN truck into the prison van in which Plaintiff sat, thereby injuring Plaintiff, he fails to state a plausible federal claim under § 1983. Accordingly, that claim, if alleged, is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**B**. **State Law Negligence**

Finally, Plaintiff alleges that "[d]efendant John Doe is negligent in causing Plaintiff's injury." Doc. 1, at 7, ¶ F. In particular, he asserts that Doe backed up the UCONN Hospital truck "too fast." *Id.*, at 4, ¶ 17. Plaintiff therefore alleges that Doe is liable for his resulting personal injuries under "the state tort of negligence." *Id.*, at 1.

Plaintiff argues that the Court may exercise supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367. *Id.* That statute provides in pertinent part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

To determine whether a state action "form[s] part of the same case or controversy" as the pending federal claim(s), the Court must determine whether the state law claim "derive[s] from a common nucleus of operative fact" and is "such that [a plaintiff] would ordinarily be expected to try [the state and federal claims"] in one judicial proceeding.'" *Valencia ex rel. Franco v. Lee*, 316 F3d 299, 305 (2d Cir. 2003) (citing and quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

The only federal claim remaining in this action is the Eighth Amendment claim against Ayotte and Olsen for deliberate indifference to the Plaintiff's safety. That claim arises from the failure of Ayotte and Olsen to hook Plaintiff's seatbelt – despite his requests – in conjunction with their knowingly sharing videos on their cell phones as Ayotte drove the van to the hospital. The facts implicated by that claim have no bearing on those which may give rise to a negligence claim against the UCONN truck driver.

In other words, whether Doe was negligent in backing the truck into the prison van on October 28, 2016, has no factual relationship with whether the two correctional officers were deliberately indifferent with respect to hooking Plaintiff's seatbelt on the journey to the hospital (during the defendants' cell phone use). By the time Doe negligently backed into the van, Ayotte had parked the van so that there was no longer a sufficiently serious or substantial risk that Plaintiff

would suffer serious harm as a result of the officers' actions (reckless driving, cell phone usage) or

inactions (failure to hook Plaintiff's seat belt).   Because the conduct giving rise to the two claims

is completely separate, Plaintiff's negligence claim is not part of the same nucleus of operative facts

as Plaintiff's federal claim.   The Court therefore lacks supplemental jurisdiction over Plaintiff's

negligence claim.[12]  *See, e.g., LaChapelle v. Torres*, 37 F. Supp. 3d 672, 684 (S.D.N.Y. 2014).

Furthermore, even if the Court did possess supplemental jurisdiction over Plaintiff's

negligence claim against Doe, that claim would likely be barred by Conn. Gen. Stat. § 4-165.  Under

Connecticut law, "state employees may not be held personally liable for their negligent actions

performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319 (2003) (citing

Conn. Gen. Stat. §4-165).  *See also St. Pierre v. Tawanna*, No. 14-CV-1866 (VAB), 2017 WL

1053838, at *8 (D. Conn. Mar. 20, 2017) (Plaintiff inmate's "negligence claims against all

Defendants in their individual capacities are therefore dismissed because Conn. Gen. Stat. § 4-165(a)

requires that negligence claims against individual state employees for negligence in their individual

capacities must be brought as a "claim against the state.") (citing Conn. Gen. Stat. § 4-165(a)).

It is unknown whether Doe was actually employed by UCONN, a state university, as a truck

driver.  However, if he was so employed and drove the truck negligently, as opposed to wantonly or

recklessly, within the scope of his employment, Conn. Gen. Stat. § 4-165(a) would bar recovery on

that claim.  *See* 28 U.S.C. § 1915A(b)(2) (requiring dismissal of action which "seeks monetary relief

---

[12]   To the extent that Plaintiff may wish to also assert that Officers Ayotte and Olsen were negligent in any of their conduct toward him on October 28, 2016, those claims would be barred by Conn. Gen. Stat. § 4-165.  Under that statute, Connecticut state employees may not be held personally liable for their negligent actions performed within the scope of their employment. *See* Conn. Gen. Stat. § 4-165(a) ("No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment.").

from a defendant who is immune from such relief").

## IV.  CONCLUSION AND ORDERS

In accordance with the foregoing analysis, the Court has performed the initial screening review of the Complaint pursuant to 28 U.S.C. § 1915A(b) and enters the following orders:

(1)  The case may proceed with respect to Plaintiff's federal claim against defendants Ayotte and Olsen, pursuant to 42 U.S.C. § 1983, for deliberate indifference to his safety in violation of the Eighth Amendment.  Plaintiff has pled a plausible claim that on October 28, 2016, the two corrections officers failed to hook his seatbelt, despite his repeated requests, in conjunction with their reckless conduct (sharing videos on their cell phones as Ayotte drove the van to the hospital).  This claim is permitted against Officers Ayotte and Olsen only in their individual capacities for money damages.

Furthermore, Plaintiff is reminded that because this claim remains plausible only as to the drive to the hospital, and not to the period while the van was parked in the loading dock, he may not recover compensatory damages resulting from the collision with the truck under this claim.  Plaintiff does not allege that he suffered any injury as the result of his seatbelt being unfastened during the earlier drive to the hospital.  While for the reasons stated an unfastened seatbelt during that time constitutes a constitutional violation, Plaintiff may recover only nominal damages, in the amount of $1.00.  *See Carey v. Piphus*, 435 U.S. 247, 266-67 (1978) (holding that where § 1983 plaintiffs cannot prove actual injury or damages caused by a constitutional violation, if they prevail, they "will be entitled to recover nominal damages not to exceed one dollar").  *See also Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 317 (2d Cir. 1999) (stating that in "terms of damages, plaintiff would be able to collect at most one dollar" because "[w]hile the main purpose of a § 1983 damages

award is to compensate individuals for injuries caused by the deprivation of constitutional rights, a litigant is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury").

(2) Plaintiff's federal claim against defendants Ayotte and Olsen, pursuant to 42 U.S.C. § 1983, for deliberate indifference to his serious medical needs in violation of the Eighth Amendment, is DISMISSED for failure to state a claim. 28 U.S.C. § 1915A(b)(1). Plaintiff has met neither the objective nor the subjective prong necessary to plead such a claim.

(3) To the extent that Plaintiff attempts to claim that on October 28, 2016, truck driver John Doe negligently or carelessly backed the UCONN truck into the prison van in which Plaintiff sat, thereby injuring Plaintiff, he fails to state a plausible federal claim under § 1983. "[M]ere negligence is insufficient as a matter of law to state a claim under section 1983." *Poe v. Leonard*, 282 F.3d 123, 145 (2d Cir. 2002) (citation omitted). That claim is DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).

(4) Plaintiff's state law claim for negligence against John Doe, the UCONN truck driver, is hereby DISMISSED. The Court lacks supplemental jurisdiction over that claim because that claim and Plaintiff's remaining federal claim do not "derive from a common nucleus of operative fact." *Valencia ex rel. Franco*, 316 F3d at 305 (citing and quoting *Gibbs*, 383 U.S. at 725). *See also* 28 U.S.C. § 1367(a).

Alternatively, even if the Court had supplemental jurisdiction over the negligence claim against Doe, it would by barred by Conn. Gen. Stat. § 4-165(a), which states that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." *See* 28

U.S.C. § 1915A(b)(2).

(5)  The Clerk shall verify the current work addresses for the two remaining defendants, Ayotte and Olsen, with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver request on the **thirty-fifth (35) day** after mailing.  If either defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on her or him, and the defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(6) Ayotte and Olsen shall file their response(s) to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If either defendant chooses to answer, as opposed to otherwise respond, he shall admit or deny the allegations and respond to the cognizable claims recited above. He  may also include any and all additional defenses permitted by the Federal Rules.

(7)  Discovery, pursuant to Federal Rules of Civil Procedure 26 to 37, shall be completed within **six months (180 days)** from the date of this Order.  Discovery requests need not be filed with the Court.

(8)  All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(9) Because success on the remaining claim in this action – the § 1983 claim for deliberate indifference to Plaintiff's safety –  would entitle Plaintiff only to nominal damages, the parties may wish to expedite this matter by jointly moving for  an early settlement conference before a magistrate

judge.

The foregoing is So Ordered.

Signed: New Haven, Connecticut
February 6, 2018

/s/Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge